JOHNSON, Justice.*
liWe granted this writ application to determine whether the State can directly enforce Article I, § 10 of the Louisiana Constitution to prevent a candidate from taking public office without regard to the Election Code’s time limitations on challenges to candidacy. Answering that question affirmatively, we reverse the ruling of the court of appeal and reinstate the ruling of the trial court.
FACTS AND PROCEDURAL HISTORY
On December 16, 1997, Tony Gibson pled guilty to the felony offense of carnal knowledge of a juvenile. In accordance with the terms of a plea bargain, Mr. Gibson was sentenced to serve a term of imprisonment of five years, the execution of which was suspended, and Mr. Gibson was placed on supervised probation for a period of three years. Mr. Gibson subsequently received an automatic first offender pardon on October 22, 2002.[1]
Article I, § 10 of the Louisiana Constitution prohibits a convicted felon from | ^qualifying for or taking public office unless he has been granted a governor’s pardon or fifteen years have elapsed since the completion of his sentence. On July 8, 2010, Mr. Gibson filled out a qualifying form for election to the Office of Alderman for the Town of Baldwin in St. Mary Parish. Therein, Mr. Gibson certified that he was not prohibited from qualifying as a candidate pursuant to Article I, § 10.[2]
Subsequent to Mr. Gibson qualifying for office, but before the election, the District Attorney for St. Mary Parish became *576 aware that Mr. Gibson was not qualified to seek elective office pursuant to Article I, § 10.[3] No formal action was taken by the District Attorney on behalf of the State to challenge Mr. Gibson’s candidacy, nor was any voter challenge brought pursuant to the Election Code.
On November 2, 2010, Mr. Gibson was elected as an alderman for the Town of Baldwin. The District Attorney for St. Mary Parish subsequently filed an ex parte motion and order in the 16th Judicial District Court, seeking to be recused from handling any civil or criminal action arising out of any potential violation of the Louisiana Election Code or the Louisiana Constitution occurring in connection with Mr. Gibson’s election. The motion alleged that Mr. Gibson, a convicted felon, was ineligible to hold public office pursuant to Article I, § 10 of the Louisiana Constitution. The motion further alleged that a civil action existed to prevent Mr. Gibson from taking office and/or remove him from office. The District Attorney claimed that a conflict existed which could reasonably prevent his office from taking | -¡part in that proceeding as at least one assistant district attorney would likely be a witness. Moreover, the motion alleged that there was a pending criminal action against Mr. Gibson in the 16th Judicial District Court, and a possible conflict of interest existed in the District Attorney’s office prosecuting both actions. The motion requested that the District Attorney for Lafourche Parish be appointed as substitute district attorney to handle any civil and criminal matters related to the claimed Election Code violations, and that the Office' of the Attorney General be appointed to take over the pending criminal action against Mr. Gibson. The trial court granted the motion on December 9, 2010.
On January 11, 2011, the Lafourche Parish District Attorney, on behalf of the Parish of St. Mary, filed a petition seeking to prevent Mr. Gibson from taking office on January 13, 2011, on the grounds that he was prohibited by Article I, § 10 from being sworn into public office and was therefore ineligible to serve as alderman for the Town of Baldwin. The State did not request injunctive relief, therefore Mr. Gibson was sworn in on January 13, 2011.
After a hearing on the merits of the State’s petition, the trial court issued judgment on February 24, 2011, holding that Mr. Gibson was not qualified to run for public office, ordering that Mr. Gibson be removed from his seat, and declaring the seat to be vacant. The trial court also denied Mr. Gibson’s Motion for New Trial.
On Mr. Gibson’s appeal, the court of appeal reversed and held the State’s petition was untimely according to the Election Code.[4] The court relied on an earlier case from the First Circuit, State v. Banta.[5] According to the court, Banta holds that if no timely opposition to qualifications or taking public office is made under the |4Election Code, one who is duly elected can only be removed by one of the methods of removing elected officials from office set forth in the Constitution and the Election Code. The court also noted the *577 State’s petition did not request injunctive relief to prevent Mr. Gibson from taking office. Thus, once Mr. Gibson was seated, the court reasoned he could only be removed by impeachment or recall.
The State filed the instant writ application in this Court, which we granted.[6]
DISCUSSION
This writ application presents the purely legal issue of whether the State can take action to directly enforce Article I, § 10 of the Louisiana Constitution, without regard to the particular procedures and time limitations contained in the Election Code.
La. Const, art. I, § 10 provides, in pertinent part:
(B) Disqualification. The following persons shall not be permitted to qualify as a candidate for elective public office or to take public elective office or appointment of honor, trust, or profit in this state:
(1) A person who has been convicted within this state of a felony and who has exhausted all legal remedies ... and has not afterwards been pardoned ... by the governor of this state....
(C) Exception. Notwithstanding the provisions of Paragraph (B) of this Section, a person who desires to qualify as a candidate for or hold an elective office, who has been convicted of a felony and who has served his sentence, but has not been pardoned for such felony, shall be permitted to qualify as a candidate for or hold such office if the date of his qualifying for such office is more than fifteen years after the date of the completion of his original sentence.
(Emphasis added).
The State argues it has plenary power to enforce the Constitution, including Art. I, § 10(B), which prevents a candidate from qualifying for office and from taking office. The State asserts this power is not diminished by the Election Code, which is | ¡¡designed to give private citizens the opportunity to challenge elections. The State further asserts it timely filed its action prior to Mr. Gibson taking office, and that Mr. Gibson is not authorized to keep his seat merely because he was elected and sworn in.
By contrast, Mr. Gibson contends this is a challenge to candidacy, which must be brought within seven days of qualifying pursuant to La. R.S. 18:1405(A) of the Election Code.[7] He points out the State did not bring an action until months after both the election and qualifying were concluded. Mr. Gibson also argues the State is not without recourse, noting the Election Code provides an indictment procedure for an election offense. Mr. Gibson states an indictment has been brought against him and a conviction of such offense can result in removal from office.[8]
After a full review of the record, and considering the briefs, argument and law, we hold the State of Louisiana has plenary power to directly enforce Art. I, § 10 of the Louisiana Constitution and is not limited to bringing a challenge under the provisions of the Election Code.
*578 The court of appeal relied on Banta to support its holding, but we do not find that case applicable. Mr. Banta was convicted of a felony in 1990 and received a first offender pardon in 1997. In 1999, he was elected to public office, and took the oath of office on January 12, 2000. Nearly three years later, in November of 2002, the district attorney filed a petition for writ of quo warranto, asserting that Mr. Banta illegally held office in violation of Art. I, § 10 of the Constitution and seeking his removal. The trial court found Mr. Banta held the office without authority and in | ¿violation of the Constitution.[9]
Mr. Banta appealed, arguing the trial court erred in utilizing the quo warranto summary proceeding to effectively remove him from office. The court of appeal agreed.[10] The court noted that a petition for writ of quo warranto pursuant to La. C.C.P. art. 3901 is a writ directing an individual to show by what authority he claims or holds public office. The court explained its purpose is to prevent usurpation of office or powers, and is essentially limited to a person who assumes or pretends to be a public officer without the authority of an election, or who has been duly addressed out of an office, or who has been removed from such an office by impeachment or recall. Because Mr. Banta proved he was duly elected, received a commission from the governor certifying same, and took his oath of office, the quo warranto action was no longer viable against him and should have been dismissed.[11]
Further, the court noted that prior to any action being taken against him, Mr. Banta had qualified for the election and taken office. The court reasoned that in filing the petition of quo warranto, the State was essentially raising questions regarding Mr. Banta’s qualifications to run for office and such issues are controlled by the Election Code.[12] The court further noted no action was filed objecting to Mr. Banta’s candidacy and that the time to do so had long since expired. Finally, the court noted the Louisiana Constitution provides other methods by which individuals may be removed from public office, such as impeachment or recall, but none of those provisions applied to Mr. Banta.[13]
|7We find the facts of Banta distinguishable from this case. First, unlike Banta, the petition in this case sought to prevent Mr. Gibson from taking office and was filed before Mr. Gibson was sworn into office. The petition in Banta was filed nearly three years after Mr. Banta took office. Further, in Banta, the State chose to bring a quo warranto action. We agree with the reasoning of the Banta court that such an action was improper. The quo warranto action is equally inapplicable in this case because Mr. Gibson is not a usurper. A usurper is a person who assumes or pretends to be a public officer without the authority of an election.[14] Thus, the State in this case properly chose not to bring a quo warranto action, and instead filed a petition to directly enforce Art. I, § 10 of the Constitution.
Moreover, to the extent Banta holds the State is limited to the actions and time limitations set forth in the Election Code to enforce Art. I, § 10, it is overruled. The legislature was charged *579 with adopting an Election Code by Article XI, § 1 of the Louisiana Constitution. The Election Code is set forth in La. R.S. 18:1 et seq. La. R.S. 18:1 provides that the Election Code “shall regulate the conduct of elections and political subdivisions shall be prohibited from adopting any law, resolution, or ordinance relative to elections and the conduct thereof, including campaign finance, except as otherwise specifically authorized in this code.” For our purposes, the relevant provisions of the Election Code are set forth in La. R.S. 18:491 et seq. and La. R.S. 18:1401 et seq., which establish the procedures by which challenges are made to candidacy and elections.
La. R.S. 18:491 provides for standing to object to candidacy and states, in pertinent part:
A. A registered voter may bring an action objecting to the candidacy of a person who qualified as a candidate in a primary election for an office | sfor which the plaintiff is qualified to vote.
B. A registered voter may present evidence that a candidate has illegally qualified for elective office. The evidence may be presented to the respective parish district attorney, who shall determine whether or not the evidence presented establishes grounds for objecting to such candidacy and if the district attorney makes such a determination he shall file an action objecting to candidacy within the time, limitation provided in R.S. 18:493.
La. R.S. 18:492 provides grounds for objecting to candidacy and states, in pertinent part:
A. An action objecting to the candidacy of a person who qualified as a candidate in a primary election shall be based on one or more of the following grounds:
[[Image here]]
(3) The defendant does not meet the qualifications for the office he seeks in the primary election.
[[Image here]]
(4) The defendant is prohibited by law from becoming a candidate for one or more of the offices for which he qualified.
The time for objecting to candidacy is set forth in La. R.S. 18:493, which provides, in pertinent part:
An action objecting to candidacy shall be commenced in a court of competent jurisdiction within seven days after the close of qualifications for candidates in the primary election. * * * After the expiration of the time period set forth in this Section, no action shall be commenced objecting to candidacy based on the grounds for objections to candidacy contained in R.S. 18:492 above.
La. R.S. 18:495 provides standing for the district attorney to object to candidacy for violations of Art. I, § 10 and states, in pertinent part:
A. If after investigation the district attorney has reason to believe that a convicted felon who is prohibited from qualifying for office pursuant to Article I, Section 10 of the Constitution of Louisiana has filed a notice of candidacy, the district attorney shall immediately bring an action objecting to the candidacy of such person. * * *
B. The district attorney shall have standing to bring such an action pursuant to this Subpart. * * * The time limitation to commence an action objecting to candidacy prescribed by R.S. 18:493 shall apply to such actions brought by the district attorney or the attorney general.
RLa. R.S. 18:1401 et seq. set forth procedures for election contests. La. R.S. 18:1401 states, in pertinent part:
*580 A. A qualified elector may bring an action objecting to the candidacy of a person who qualified as a candidate in a primary election for an office in which the plaintiff is qualified to vote.
B. A candidate who alleges that, except for substantial irregularities or error, or except for fraud or other unlawful activities in the conduct of the election, he would have qualified for a general election or would have been elected may bring an action contesting the election.
C. A person in interest may bring an action contesting any election in which any proposition is submitted to the voters if he alleges that except for irregularities or fraud in the conduct of an election the result would have been different.
* * *
La. R.S. 18:1405 provides the time periods to bring such an action and states, in pertinent part:
A. An action objecting to candidacy shall be instituted not later than 4:30 p.m. of the seventh day after the close of qualifications for candidates in the primary election. After the expiration of the time period set forth in this Section, no further action shall be commenced objecting to candidacy based on the grounds for objections to candidacy contained in R.S. 18:492.
B. An action contesting any election involving election to office shall be instituted on or before 4:30 p.m. of the ninth day after the date of the election', * * *.
[[Image here]]
After reviewing these provisions of the Election Code, we do not find they provide the State with an adequate remedy to fully enforce Art. I, § 10 in this case. La. R.S. 18:491 et seq. address procedures for bringing an action to challenge a candidate’s qualifications. These statutes are primarily focused on challenges brought by registered voters, and also provide a short time frame for bringing such actions. La. R.S. 18:491 gives registered voters standing to directly object to candidacy, and further provides that a registered voter can present evidence of a candidate’s illegal qualification for office to a district attorney, who must then file an action if it is Unsupported by that evidence. This statute does not provide standing for a district attorney to bring an action sua sponte.[15] La. R.S. 18:493 requires that challenges to candidacy be brought within seven days of the close of the qualifying period.
The sole provision aimed at State action is La. R.S. 18:495, which gives a district attorney standing to bring an action objecting to the candidacy of a person who is not qualified under Art. I, § 10. However, such an action must also be brought within the same seven-day time period. While the State could have used La. R.S. 18:495 to challenge Mr. Gibson’s qualification? prior to the election, and within the seven day period provided by La. R.S. 18:493, La. R.S. 18:495 does not provide for an action to challenge a candidate’s qualifications, or object to a candidate taking office, after the seven-day time period. There is no evidence in the record indicating the State was aware that Mr. Gibson was in violation of Art. 1, § 10 within that seven-day time period. Thus, by the time the District Attorney became aware of the violation, he was prohibited by La. R.S. 18:495 from challenging Mr. Gibson’s candidacy. Limiting the State to an action pursuant to La. R.S. 18:495 would deny the State a remedy in this case.
*581 La. R.S. 18:1401 et seq. provide for election challenges, but do not give the State standing to bring such actions. Further, such challenges are not directly aimed at violations of Art. I, § 10.
Moreover, there are procedures in the Election Code and the Constitution for removing a person from public office, but none of these provisions are applicable to Mr. Gibson. La. R.S. 42:1411 provides for the removal of a public officer from office for conviction of a felony during his term of office. Louisiana Constitution Art. X, § 24 provides for impeachment of an elected official for commission or conviction of |na felony or malfeasance or gross misconduct while in office. Mr. Gibson pled guilty to a felony offense in 1997, years prior to being elected alderman. Thus, because Mr. Gibson did not commit such an offense while in office, these provisions are inapplicable.
Recall elections are authorized by Louisiana Constitution Art. X, § 26 and initiated by a petition signed by a requisite number of qualified electors. La. R.S. 18:1300.2. Although it is technically conceivable that a district attorney, as a qualified elector, could institute a recall drive, the Constitution and enabling statutes clearly envision the proceeding as a civic undertaking by the electorate. Further, a recall petition does not require any particular cause for removal, and thus cannot be considered the proper relief for the State to enforce Article I, § 10.
Additionally, La. R.S. 42:76 provides that an action shall be brought by the State when a person usurps, intrudes into, or unlawfully holds or exercises or attempts to remain in possession of any public office. However, as discussed earlier in this opinion, Mr. Gibson is not a usurper of the office. Thus, any action under this statute, or an action for writ of quo war-ranto pursuant to La. C.C.P. art. 3901 would be improper.
Finally, Mr. Gibson argues the State has a remedy in this case because the Election Code provides he can be removed from office if convicted of an election offense. We disagree. La. R.S. 18:1461.3(A)(3) provides for an election offense if a person supplies a false answer or statement to an election official or in any document required by the Election Code or executes an affidavit knowing it contains false or incorrect information. This statute provides for particular penalties. La. R.S. 18:1461.8(A) provides that if a candidate is convicted of violating 18:1461.3(A)(3), he “shall forfeit such public office,” in addition to the penalties provided. While the | instate may pursue criminal charges against a candidate based on the above provisions, we do not find the State is required to pursue a criminal conviction in order to enforce Art. I, § 10. There may be cases where a criminal conviction, although warranted, is not obtained. Moreover, there may be cases where a criminal conviction is not warranted, yet a candidate is still in violation of Art. I, § 10. To limit the State to this remedy alone is ineffective.
It is clear the procedures enumerated in the Election Code for challenging a candidate’s qualifications, and the procedures providing for the removal of a candidate from office, do not provide the State with an effective method to enforce Article I, § 10 based on the facts of this case. However, the State is not limited to traditional challenges under the Election Code. The prohibition contained in Art. I, § 10 is two-fold. Article I, § 10 not only sets forth qualifications for office by prohibiting a felon from qualifying for public office unless certain conditions are met, but it goes further by expressly prohibiting such a felon from taking office. Although the *582 provisions of the Election Code do not directly provide a method or cause of action for the State to prevent Mr. Gibson from taking office in violation of Art. I, § 10, we find the State can bring a direct action pursuant to that constitutional provision. A cause of action arises when Art. I, § 10 is violated because the constitutional prohibition contained therein is self-executing.[16] , A constitutional provision is self-executing when it can be given effect without the aid of legislation, and there is nothing to indicate that legislation is intended to make it operative.[17]
Art. I, § 10 prevents a convicted felon from qualifying for or taking public office unless he has obtained a governor’s pardon or fifteen years have elapsed from | iacompIetion of the sentence. It is undisputed that Mr. Gibson obtained a first offender pardon, but not a governor’s pardon. In Touchet v. Broussard,[18] this Court held that an automatic first offender pardon is different than a governor’s pardon in that it does not restore the status of innocence. We explained:[19]
Article I, § 10(B) is specifically limited to gubernatorial and presidential pardons and makes no mention of automatic first offender pardons. Further, the automatic pardon provision for first offenders was added to the 1921 Constitution by a 1968 amendment. When the pardon process was overhauled during the 1973 Constitutional Convention, the automatic pardon provision remained and was enacted in Article IV, § 5. Not only was La. Const, art. , § 10(B) enacted later than La. Const, art. IV, § 5(E), Article I is in the “Declaration of Rights” section of the constitution, Article IV, § 5 delineates the powers of the executive branch, and § 5(E)(1) grants to the governor the power to pardon. Further, § 10(B) specifically addressed the right to run for public office and the provision allowing a convicted felon to run for office expressly applies only to a felon who “has not afterwards been pardoned either by the governor of this state or by the officer of the state, nation, government or country having such authority to pardon in the place where the person was convicted and sentenced.” Had the people intended for felons who had been granted an automatic first offender pardon to be immediately qualified to run for office pursuant to La. Const, art. I, § 10 they could have said so, and they did not. Instead, a convicted felon is not forever prohibited from running for public office, he simply must wait 15 years from the completion of his sentence.
(Internal citations removed). The plain meaning of the unambiguous language of Art. I, § 10 prohibits Mr. Gibson from serving in office, and this language must be applied as written.[20] Mr. Gibson currently holds an office he is not qualified to hold under the Constitution. We do not find Mr. Gibson should be allowed to hold office in violation of Art. I, § 10 simply because the State was not aware of the violation and did not bring a challenge to his qualifications within the confines of the Election Code. The | ^constitution is the supreme law of this state to which all *583 legislative acts must yield.[21] Thus, the time limits and procedures set forth in the Election Code cannot be applied to limit the State’s power to enforce Art. I, § 10. If the Louisiana Constitution is to have validity, the State of Louisiana must retain the plenary power to support and execute its provisions whenever a violation exists.[22] Therefore, we hold the State had plenary power in this case to bring this direct action pursuant to Art. I, § 10 to prevent Mr. Gibson from taking office in violation of the Constitution.
CONCLUSION
While the Election Code provides certain procedures for challenging a candidate’s qualifications prior to an election, it does not provide a direct procedure for the State to prohibit a candidate, once elected, from taking public office in violation of Art. I, § 10 of the Louisiana Constitution. Art. I, § 10 is a self-executing provision which specifically prohibits certain felons from qualifying for public office and from taking public office. For the reasons stated herein, we hold the State was entitled to bring a direct action pursuant to Art. I, § 10 to prohibit Mr. Gibson from taking office.
DECREE
REVERSED. RULING OF THE TRIAL COURT REINSTATED.
Retired Judge FRANK FOIL, assigned as Justice ad hoc, sitting for WEIMER, J., recused.

 Retired Judge Frank Foil, assigned as Justice ad hoc, sitting for Weimer, J., recused.

. La. Const, art. IV, § 5(E)(1) provides, in pertinent part: "[A] first offender convicted of a non-violent crime ... never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor.”

. A notice of candidacy shall include a certificate, signed by the candidate, certifying that he meets the qualifications of the office for which he is qualifying and also that he is not currently under an order of imprisonment for conviction of a felony and that he is not prohibited from qualifying as a candidate for conviction of a felony pursuant to Article I, Section 10 of the Constitution of Louisiana. La. R.S. 18:463(A)(2)(a)(ii) & (iii).

.It is not clear from the record exactly when the District Attorney’s office became aware of the issue relative to Mr. Gibson’s candidacy. The State asserts in brief that the St. Mary Parish District Attorney was alerted to the situation in August of 2010. Additionally, the record contains two emails referencing the issue from the District Attorney’s office dated September 17, 2010, and October 6, 2010, addressed to an attorney who was apparently representing Mr. Gibson at that time.

. State v. Gibson, 11-1185, 2012 WL 1744464 (La.App. 1 Cir. 5/11/12) (unpublished).

. 03-0200 (La.App. 1 Cir. 2/23/04), 872 So.2d 1110.

. State v. Gibson, 12-1145 (La.10/8/12), 98 So.3d 865.

. La. R.S. 18:1405(A) provides, in pertinent part: "An action objecting to candidacy shall be instituted not later than 4:30 p.m. of the seventh day after the close of qualifications for candidates in the primary election.”

.Counsel for Mr. Gibson states in brief that Mr. Gibson has been indicted for such a violation, but this information is not included in the record.

. Banta, 872 So.2d at 1112.

. Id.

. Id. at 1113.

.Id. at 1113-14.

. Id.

. See La. C.C.P. art. 3901 and La. R.S. 42:71.

. See Office of the District Attorney v. Cormier, 11-1322 (La.App. 4 Cir. 9/23/11), 76 So.3d 544, 545; Burkett v. Lewis, 42,985 (La.App. 2 Cir. 9/21/07), 966 So.2d 718, 721.

. See Avenal v. State, 03-3521 (La.10/19/04), 886 So.2d 1085, 1104.

. See Succession of Boyter, 99-0761 (La.1/7/00), 756 So.2d 1122, 1135.

. 10-0380 (La.3/3/10), 31 So.3d 986, 995-96.

. Id., at 992-93.

. East Baton Rouge Parish School Bd. v. Foster, 02-2799 (La.6/6/03), 851 So.2d 985, 996.

. See City of New Orleans v. Louisiana Assessors' Retirement and Relief Fund, 05-2548 (La.10/1/07), 986 So.2d 1, 13.

. See La. Const. art. IV, § 5.